UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSION PLAN, | No. C-12-04738 DMR |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| YUBACON INC, | |
| Defendants. | |

Plaintiffs Pension Plan for Pension Trust Fund for Operating Engineers, F.G. Crosthwaite, and Russell E. Burns move the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of a default judgment against Defendants AM Pacific Engineering ("AMP") and MV2 Energy, Inc. ("MV2"). [Docket No. 77.] Plaintiffs ask the court to award unpaid withdrawal liability, interest, liquidated damages, attorneys' fees, and costs in the amount of $1,105,696.48. The court held a hearing on October 9, 2014. For the reasons below, the court GRANTS Plaintiffs' motion.[1]

## I. Background

**A.   The Parties**

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"),

---

[1] All parties have consented to have the undersigned conduct all proceedings in this case, including entering final judgment, pursuant to 28 U.S.C. § 636(c). [*See* Docket Nos. 5, 26.]

29 U.S.S. §§ 1001-1461. Plaintiff Pension Plan for Pension Trust Fund for Operating Engineers ("the Plan") is 1) an employee benefit plan as defined in ERISA § 3, 29 U.S.C. § 1002(3); 2) an employee benefit pension plan as defined in ERISA § 3(2), 29 U.S.C. § 1002(2); and 3) a multiemployer plan as defined in ERISA §§ 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3). (Compl. ¶ 5.) The Plan is jointly administered and is maintained pursuant to the Labor Management Relations Act § 302(c), 29 U.S.C. § 186(c). (Compl. ¶ 5.) Plaintiffs Crosthwaite and Burns are members of the Board of Trustees of the Plan and are empowered to bring this action on behalf of the Plan pursuant to ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1)-(b). (Compl. ¶ 6.)

Yubacon, Inc. ("Yubacon") is a suspended California corporation and was an employer within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and the National Labor Relations Act ("NLRA") § 2(2), 29 U.S.C. § 152(2). (Compl. ¶ 7.) Michael L. Murray was the sole shareholder of Yubacon and owns a controlling interest in Defendants AMP and MV2, which are both California corporations. (Compl. ¶ 8; Decl. of Babu, Aug. 21, 2014 ¶¶ 3-7, Exs. D, E.) Therefore, Yubacon, AMP, and MV2 are within the same controlled group and are treated as a single employer under ERISA § 4001(b), 29 U.S.C. § 1301(b). (Compl. ¶ 8; Babu Decl. ¶¶ 6-7.)

**B.     Factual Allegations**

Yubacon was a participating employer in the Plan pursuant to a collective bargaining agreement ("the CBA") with the Operating Engineers Local Union No. 3 ("the Union"). (Compl. ¶ 14.) Specifically, on August 24, 2000, Murray, on behalf of Yubacon, became a signatory to a Master Agreement for Northern California between the Union and employers which obligated Yubacon to make fringe benefit contributions to the Plan. (Compl. ¶ 14; Trento Decl., Aug. 19, 2014, ¶ 5 Ex. 1.) Plaintiffs allege that Yubacon ceased paying fringe benefit contributions to the Plan after it reported hours for work performed in May 2008, and that on January 1, 2011, Yubacon made a complete withdrawal from participation in the Plan under ERISA § 4203(b), 29 U.S.C. § 1383(b). (Compl. ¶ 15; Trento Decl. ¶ 6.) Further, Plaintiffs allege that within five years of Yubacon's withdrawal, AMP performed work of the type for which contributions were previously required to be made by Yubacon in the jurisdiction of Yubacon's CBA. (Compl. ¶ 16.) Therefore, since AMP continued covered work within five years from the time that Yubacon ceased

contributing to the Plan, the building and construction exception to withdrawal liability under ERISA § 4203(b), 29 U.S.C. § 1383(b), does not apply. (Compl. ¶ 16.)

Plaintiffs allege that on January 11, 2012, they notified Yubacon by letter of its withdrawal liability in the amount of $732,185.00, calculated as of December 31, 2007, payable in one lump sum before March 1, 2012 or in installments according to a payment schedule. (Compl. ¶¶ 17-18; Trento Decl. Ex. 3.) The payment schedule provided for five payments of $37,995.42 and one payment of $26,178.71, with the first payment due on March 1, 2012. (Trento Decl. Ex. 3 § II.) In their letter, Plaintiffs stated that the withdrawal liability was being assessed against Yubacon and each member of its controlled group. (Trento Decl. Ex. 3.) In addition, the letter provided that Yubacon could challenge the calculation of withdrawal liability by requesting review within 90 days, and that any dispute concerning the determination of the withdrawal liability must be resolved through timely initiation of arbitration. (Compl. ¶ 18; Trento Decl. Ex. 3 § III.)

Plaintiffs allege that Defendants and Murray did not request review of the assessment or initiate arbitration, and that the time to do so has expired. (Compl. ¶ 21.) Defendants and Murray did not pay the withdrawal liability as a lump sum and failed to make any of the installment payments. (Compl. ¶ 19.) On May 2, 2012, after the first missed installment payment, Plaintiffs notified Yubacon that it would be in default if it failed to cure the delinquent payments within 60 days pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5). (Compl. ¶ 19; Babu Decl. ¶ 10 Ex. G.) Plaintiffs allege that Yubacon did not make any payment and did not respond to the May 2, 2012 notice to cure. (Compl. ¶ 20.) Accordingly, the Plan declared Defendants to be in default and accelerated the withdrawal liability, with the entire unpaid withdrawal liability of $732,185.00 plus interest immediately due and payable on July 4, 2012. (Compl. ¶ 21.) Plaintiffs seek judgment against AMP and MV2 for the entire balance of the unpaid withdrawal liability, plus interest, liquidated damages, attorneys' fees, and costs.

**C.     Procedural History**

Plaintiffs filed their Complaint on September 11, 2012, naming as Defendants Yubacon, AMP, Murray, MV2, and Old Hatchery, Inc. ("Old Hatchery").[2] [Docket No. 1.] Plaintiffs personally served the summons and Complaint on Murray as agent for service of process for all Defendants. [Docket No. 10.] On January 17, 2013, AMP and MV2 filed Answers to the Complaint and default was entered as to Yubacon and Old Hatchery. [Docket Nos. 19, 20, 21.] The parties participated in a court-ordered mediation on May 28, 2013 which was unsuccessful. [Docket No. 32.] In July 2013, Plaintiffs dismissed Murray, Yubacon, and Old Hatchery. [Docket Nos. 36, 42.] Plaintiffs, AMP and MV2 participated in a court-ordered settlement conference before the Honorable Nathanael Cousins on November 22, 2013, but did not reach a settlement. [Docket No. 57.]

On February 10, 2014, Salamirad Morrow P.C. ("Salamirad Morrow") moved to withdraw as counsel for AMP and MV2. [Docket Nos. 62, 63.] The court granted Salamirad Morrow's motion on March 18, 2014, stayed all deadlines in the case for 30 days, and ordered AMP and MV2 to file substitutions of counsel by April 18, 2014. [Docket No. 70.] AMP and MV2 did not file substitutions of counsel, and on April 24, 2014, the court struck their answers. [Docket No. 71.] The Clerk entered their defaults on May 9, 2014 (Docket No. 74) and this motion followed. On September 26, 2014, the court ordered Plaintiffs to submit supplemental briefing in support of the motion for default judgment, which Plaintiffs timely filed on October 3, 2014. [Docket Nos. 86, 89.] The court held a hearing on October 9, 2014. Despite being served with notice of the hearing (*see* Docket No. 80), AMP and MV2 did not appear.

## II. Default Judgment

**A.    Applicable Law**

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792

---

[2] Plaintiffs alleged that Old Hatchery, Inc. was a California corporation in which Murray owned at least an 80% interest. (Compl. ¶ 8.)

4

F.2d 915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."); *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 999.

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The fourth factor focuses on the amount at issue in the action, as courts should be hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

**B.     Analysis**

The court finds that it has subject matter jurisdiction over this case pursuant to 29 U.S.C. §§ 185 (granting labor union organizations power to sue employers in federal court) and 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). It exercises personal jurisdiction over AMP and MV2 because they are California corporations. (Compl. ¶ 8.) Regarding the adequacy of service of process, a party may serve a corporation "following state law

for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); *see also* Fed. R. Civ. P. 4(h)(1)(A) (authorizing service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual"). Here, the court has reviewed the proof of service (Docket No. 10) and finds that Plaintiffs properly served the summons and complaint on AMP and MV2 by personally serving Murray as agent for service of process. *See* Cal. Civ. Proc. Code §§ 415.10 (authorizing service of summons by personal delivery to person to be served), 416.10(a) (authorizing service on corporation by delivering summons and complaint to designated agent for service of process).

Turning to the first *Eitel* factor, Plaintiffs will suffer great prejudice if the court does not enter a default judgment against AMP and MV2 because Plaintiffs otherwise have no means to recover the contributions to which they are entitled under the Plan. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Plaintiffs also fulfill the second and third *Eitel* factors. First, Plaintiffs' complaint pleads the elements of a claim for failure to pay withdrawal liability. Under ERISA, "an employer [that] withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal . . . is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a). A complete withdrawal occurs when an employer "permanently ceases to have an obligation to contribute under the plan, or . . . permanently ceases all covered operations under the plan." 29 U.S.C. § 1381. Plaintiffs alleged that Yubacon entered into the Plan, which was a multiemployer plan under ERISA. (Compl. ¶ 5.) They also provided evidence to support this allegation. (Trento Decl. Ex. 1.) Plaintiffs alleged that on January 1, 2011, Yubacon made a complete withdrawal from participation in the Plan pursuant to ERISA § 4203(b), 29 U.S.C. § 1381(b). (Compl. ¶ 15.)

As to AMP and MV2's liability for the amount of the withdrawal liability assessed against Yubacon, under ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1), "all trades and business" which are "under common control" shall be treated as a single employer and "thus are jointly and severally liable for each other's withdrawal liability." *Bd. of Trs. of W. Conference of Teamsters Pension Tr. Fund v. Lafrenz*, 837 F.2d 892, 893 (9th Cir. 1988). For purposes of Section 1301(b), whether businesses are under "common control" is determined according to Internal Revenue Code

regulations, 26 U.S.C. § 414(c). 29 U.S.C. § 1301(b)(1). Common control requires that the same group of people or organizations (1) own a controlling interest in each business alleged to be under common control; and (2) the same group of people or organizations are in effective control of each business alleged to be under common control. *Id.*; *see* 26 C.F.R. 1.414(c)-2(a), (c). Internal Revenue Code regulations further provide that for purposes of determining ownership of an interest in an organization, an individual is considered to own an interest owned directly or indirectly by the individual's children under the age of 21. 26 C.F.R. § 1.414(c)-4(b)(6). Where an individual is in effective control of an organization, then that individual is considered to own an interest owned directly or indirectly by the individual's children over the age of 21. 26 C.F.R. § 1.414(c)-4(b)(6)(ii.)

Here, Plaintiffs have presented evidence that Murray was the sole owner of Yubacon. (Compl. ¶ 8; Babu Decl. ¶ 3.) They have also presented evidence that Murray was the controlling shareholder of AMP and MV2. Specifically, they have presented evidence that Murray owns a 51% interest in AMP and that his son, Adam Murray, owns the remaining 49% interest. (Babu Decl. ¶¶ 4, 6, 7, 8, Exs. B, D, E.) As Adam Murray's interest is attributed to Michael Murray pursuant to applicable regulations, Murray is considered to own 100% of AMP. *See* 26 C.F.R. §§ 1.414(c)-4(b)(6), 4(b)(6)(ii). In addition, they have presented evidence that Murray owns an 84% interest in MV2. (Babu Decl. ¶¶ 5, 6, Exs. C, D.) Therefore, Yubacon, AMP, and MV2 are under Murray's common control for purposes of 29 U.S.C. § 1301(b). AMP and MV2 are accordingly jointly and severally liable for the withdrawal liability incurred by Yubacon. *See Lafrenz*, 837 F.2d at 894, 895 (noting that "[t]he point of section 1301(b)(1) is simply to prevent the controlling group of a company from avoiding withdrawal liability by shifting corporate assets into other business ventures under its control").

The fourth factor poses little difficulty for Plaintiffs. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted). The

sum of actual and statutory damages, interest, attorneys' fees, and costs that Plaintiff seeks is $1,105,696.48, which the court finds neither gratuitous nor unreasonable. With respect to the fifth prong, AMP and MV2 have not contested any of Plaintiffs' material facts. Finally, nothing in the record suggests that AMP and MV2 defaulted due to excusable neglect. The court granted counsel's motion to withdraw on March 18, 2014 and gave AMP and MV2 thirty days in which to file substitutions of counsel upon penalty of striking their answers. AMP and MV2 failed to file substitutions of counsel. Additionally, Plaintiffs served them submissions related to the pending motion for default judgment, (*see* Docket Nos. 81, 87, 89), and AMP and MV2 have failed to respond. *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1005. Examining these facts in the aggregate, the court finds that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits. The court therefore grants Plaintiffs' motion for entry of a default judgment.

### III. Damages

To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

Where an employer has defaulted on its obligation to pay withdrawal liability, a plan fiduciary may bring an action to compel the employer to pay withdrawal liability. 29 U.S.C. § 1451(a). In an action to compel payment of withdrawal liability, unpaid withdrawal liability is "treated in the same manner as a delinquent contribution." 29 U.S.C. § 1451(b). Thus, enforcement actions for withdrawal liability, like unpaid contributions, are governed by 29 U.S.C. § 1132, which provides:

> in any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of–
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under

>     Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### A.  Withdrawal Liability

Plaintiffs have presented evidence that upon Yubacon's complete withdrawal from the Plan, they sent Yubacon, Murray, Old Hatchery, and AMP notice of Yubacon's withdrawal liability in the amount of $732,185.00.  (Trento Decl. ¶¶ 7, 8; Exs. 2, 3.)  No Defendant requested a timely review or initiate arbitration to challenge the amount of withdrawal liability.  Therefore, the court awards this amount in full.  *See Pension Tr. Fund for Operating Eng'rs v. Joco Geospatial Cos., Inc.*, No. C-11-2482 EMC, 2011 WL 6303404, at *3-4 (N.D. Cal. Dec. 16, 2011).

### B.  Interest

Plaintiffs seek $190,971.20 in interest, calculated at a rate of 10% per year, on the full withdrawal liability amount of $732,185.00, for the period of March 1, 2012 (the date the first quarterly payment was due) through October 9, 2014 (the date of the hearing on this motion).  (Trento Decl. ¶ 12.)  Section X(B) of the Plan's Withdrawal Liability Procedures, adopted on May 24, 2010, provides that delinquent withdrawal liability will incur interest at the rate of 10% per year from the date of the first withdrawal installment payment that was not timely made.  (Trento Decl. ¶ 9, Ex. 3 (Ex. B § X(B)).)  The court awards Plaintiffs the interest in full.

### C.  Liquidated Damages

Plaintiffs request $146,437.00 in liquidated damages, which equals 20% of the unpaid withdrawal liability.  (Trento Decl. ¶ 13.)  This amount is consistent with the Plan's Withdrawal Liability Procedures and ERISA, which provide for the award of liquidated damages in the amount of 20% of the entire accelerated withdrawal liability.  (Trento Decl. ¶ 10, Ex. 3 (Ex. B § XI(B)).)  *See* 29 U.S.C. § 1132(g)(2)(C)(ii).  The court awards Plaintiffs the requested liquidated damages in full.

### D.  Attorneys' Fees

Attorneys' fees incurred in actions brought to enforce an employer's withdrawal liability obligations are available under 29 U.S.C. § 1132(g).  Further, Plaintiffs may recover attorneys' fees incurred by the Plan in connection with efforts to enforce these obligations before a legal action is initiated under the CBA.  (Trento Decl. Ex. 1 § 12.13.02; Ex. 3 (Ex. B § XVI).)

From August 26, 2011 through July 31, 2014, Plaintiffs have incurred $31,144.00 in attorneys' fees based upon the following rates and hours: (1) 64.90 hours by Shaamini Babu, at a rate of $205 per hour; and (2) 35.10 hours by Julie Richardson, at two rates: $195 per hour from August 30, 2011 through May 31, 2012 and $205 per hour from June 1, 2012 through April 18, 2013.  (Babu Decl. ¶¶ 15, 16; Ex. H.)  Additionally, Plaintiffs seek fees for 89.30 hours of work performed by three paralegals at the rates of $115 per hour and $120 per hour.  (Babu Decl. ¶¶ 17-19; Ex. H.)  These are reasonable San Francisco Bay Area rates for ERISA claims.  *See, e.g., Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving hourly rate of $400 for associates and $150 for paralegals); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability*, No. 08-2560 SI, 2010 WL 1460201, at *2 (N.D. Cal. April 12, 2010) (approving hourly rate of $550 for partner and $150 for paralegals); *Caplan v. CNA Fin. Corp.*, 573 F. Supp. 2d 1244, 1249 (N.D. Cal. 2008) (approving hourly rates of $350 and $330 for associates).  Plaintiffs submitted a supplemental declaration detailing the hours expended in this litigation.  (Babu Decl., Oct. 3, 2014 ("2d Babu Decl."), Ex. B.)  Based upon the supplemental evidence provided by Plaintiffs, the court finds that the hours expended are reasonable.  Therefore, the court awards $31,144.00 in attorneys' fees.

**E.     Costs**

The court will award costs if "the prevailing practice in a given community [is] for lawyers to bill those costs separately from their hourly rates." *Trs. of Contrs. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotation marks omitted); *see* 29 U.S.C. § 1132(g)(2)(D).  Plaintiffs have incurred $4,959.28 in costs in the action to date, including $2,620 in investigation costs.  (Babu Decl. ¶ 20, Ex. H; 2d Babu Decl. ¶¶ 9-11, Exs. C, D.) *See Auto. Indus. Pension Trust Fund v. Lew Williams, Inc.*, No. C-11-02185 EDL, 2011 WL 4853606, at *3 (N.D. Cal. Aug. 30, 2011) *report and recommendation adopted*, C-11-02185 PJH, 2011 WL 4853600 (N.D. Cal. Oct. 13, 2011) (awarding $4,000 in investigative costs where amount

of time expended, billing rates, and costs were found reasonable given work performed). The court finds that the requested costs are reasonable and that they have been adequately documented and awards $4,959.28 in costs.

### IV. Conclusion

For the reasons stated above, the court grants Plaintiffs' motion for default judgment, and awards Plaintiffs unpaid withdrawal liability, interest, liquidated damages, attorneys' fees, and costs in the amount of $1,105,696.48.

IT IS SO ORDERED.

Dated: October 14, 2014



DONNA M. RYU
United States Magistrate Judge